**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | **NO. 02-172-07** |
| **CHRISTOPHER WILLIAMS** | : | |

<u>**MEMORANDUM**</u>

**Tucker, J.**                                                                                           **May 9, 2022**

       Before the Court is Petitioner Christopher Williams' Motion for Imposition of a Reduced Sentence under Section 404 of the First Step Act (ECF No. 2943), Petitioner's Counseled Supplemental Motion for Hearing and Reduced Sentence Under the First Step Act (ECF No. 3052), the Government's Response thereto (ECF No. 3055), Petitioner's *Pro Se* Reply (ECF No. 3064), and a Sentencing Hearing before the Court held on November 22, 2021. Upon consideration of the parties' submissions, the oral arguments and testimony presented, and letters of support from Mr. Williams' family and community, the Petitioner's Motion is granted and the Court reduces his term of imprisonment for 21 USC § 846 from Life to 180 months. The mandatory minimum sentences for Mr. Williams' two 18 USC § 924(c) convictions remain unchanged at 300 months and 60 months. For his sentence of 180 months plus 300 months plus 60 months Mr. Williams is to receive credit for time served, and upon his release from custody, his period of supervised release is reduced to four (4) years.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

       In October 2002, Mr. Williams and 36 co-defendants were charged in a superseding indictment with:

---

[1]    This Memorandum Opinion accompanies the Court's Order dated May 9, 2022.

1. one count of conspiracy to distribute five kilograms or more of cocaine and 50 grams or more of crack, in violation of 21 U.S.C. § 846;
2. one count of using a telephone in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 843; and
3. two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Mr. Williams was a senior member within the Courtney Carter drug trafficking organization. As a part of his membership, he participated in a deadly feud with "Zip-World," a rival drug trafficking group. This feud eventually led to the murder of Grayling Craig, a member of Zip-World. Although Williams participated in Craig's shooting, he was not the shooter.

On January 30, 2004, the jury found him guilty of the conspiracy offense and the two firearms offenses but acquitted him on the telephone count. The jury found that Williams was responsible for the distribution of 50 grams or more of crack, but was not asked to make a quantity finding as to cocaine.

In its guideline calculation, the Probation Office found that Williams was responsible for the distribution of more than 1.5 kilograms of crack and 150 kilograms of cocaine. An offense involving more than 1.5 kilos of crack carried the highest base offense level of 38. The Probation Office applied a two-level enhancement for obstruction of justice (witness intimidation) and a three-level enhancement for his role in the offense, resulting in an adjusted offense level of 43. Williams was in criminal history category V, and his guideline range on the conspiracy count was life imprisonment. *See* PSR ¶ 108. Williams was also subject to a consecutive sentence of 5 years on the first 924(c) count, and 30 years on the second count. Williams' mandatory minimum sentence on the conspiracy count was 10 years, pursuant to 21 U.S.C. § 841(b)(1)(A), and his maximum sentence was life.

At the sentencing hearing on April 29, 2004, Judge Dalzell adopted many of the Probation Office's findings and held that Williams was responsible for more than 1.5 kilograms

of crack, which triggered the application of level 38. With the role and obstruction enhancements, the adjusted Section 2D1.1 offense level was 43. The court also found that the defendant had committed first-degree murder in the course of the conspiracy, and determined that the murder guideline, U.S.S.G. § 2A1.1, should be applied. *See* U.S.S.G. § 2D1.1(d) (cross reference to § 2A1.1). The base offense level under Section 2A1.1 was 43. *See* Addenda to Presentence Report. With the role and obstruction adjustments, his total offense level was 48. Judge Dalzell sentenced Mr. Williams to life, plus the mandatory consecutive 30-year sentence on the 924(c) counts. The court also imposed a term of supervised release of five years.

In the years that Mr. Williams has been incarcerated, he has done commendable work towards his rehabilitation and successful reentry. He has: completed over 400 hours of instructional training to prepare himself for gainful employment and active community participation, attained a remarkably clear disciplinary record,[2] and maintained strong family and community ties. These familial and community ties have guaranteed housing and employment for Mr. Williams upon his release and sacrificed their time to appear in Court or write letters to advocate on his behalf.

## II.    STANDARD OF REVIEW

The Fair Sentencing Act of 2010 (FSA) reduced the crack-to-powder disparity to 18:1. See *Dorsey v. United States*, 567 U.S. 260, 269 (2012) (discussing Section 2 of the Fair Sentencing Act). Thus, whereas increased statutory ranges used to be triggered by 5 grams and 50 grams of crack cocaine, now those increased ranges are triggered by 28 grams and 280 grams. *See* 21 U.S.C. § 841(b)(1)(A) & (B). However, because these changes were not retroactive, thousands of people, including Mr. Williams, are currently serving sentences under pre-2010

---

[2]    Mr. Williams has two minor disciplinary infractions for phone abuse, both over 15 years old.

crack laws that Congress long ago deemed irrational and unfair. Section 404 of the First Step Act of 2018 aims to remedy this injustice, by making the FSA's changes to statutory ranges for crack defendants retroactive. Here is the full text of § 404 (the "Act"):

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
>
> (a) Definition Of Covered Offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
> (b) Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
> (c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, S. 3747, 115th Cong. § 404(a) (2018).

The Act gives sentencing courts broad authority to impose reduced sentences in pre-FSA crack cases, limited only by the FSA mandatory minimum if there is one.

18 U.S.C. § 3553(a) provides seven factors for consideration in imposing a sentence, all of which must be evaluated in the reduction in sentence currently before the Court:

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553 (West)

## III.   DISCUSSION

Mr. Williams' sentence was imposed under a statutory section that was modified by the FSA: § 841(b)(1)(B).  His crack offense was committed before August 3, 2010 and he was neither sentenced nor resentenced under sections 2 or 3 of the FSA.  This is his first motion under the First Step Act. The statute of conviction requires distribution of at least 280 grams of crack to trigger the same statutory range charged in Count 1. Mr. Williams is no longer subject to the minimum statutory range of 10 years; instead the statutory range is now 5 to 40 years. *See* § 841(b)(1)(A)-(C). In addition, the previous mandatory supervised release term of 5 years is reduced to 4 years. *Id.*

As *United States v. Jackson*, 964 F.3d 197, 207 (3d Cir. 2020) recognized and Section 404(c) of the Act makes clear, even if eligible for a reduction, the decision to reduce a sentence is discretionary. *See* First Step Act of 2018, Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222 (2018) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.") This decision must be based on a consideration of the Section 3553(a) sentencing factors and post-offense conduct. *See, e.g.*, *Pepper v. United States*, 131 S. Ct. 1229, 1243, 1249 (2011) (post-sentencing developments, whether favorable or unfavorable to the defendant, bear directly on the court's duty to impose a reduced sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing); *United States v. Easter*, 975 F.3d 318, 326 (3d Cir. 2020).

The Court must apply the seven 18 U.S.C. § 3553(a) factors in evaluating Mr. Williams'
sentence for reduction. First, the nature and circumstances of the offense represent the unjust and
discriminatory sentencing disparities that the FSA intended to remedy, and the history of as
contrasted with the current characteristics of Mr. Williams indicate concrete efforts to
rehabilitate that support a reevaluation and ultimately a reduction. Second, the need for the
sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, protect the
public from further crimes, and provide the defendant with needed training or treatment in the
most effective manner. This factor is adequately addressed since a cumulative sentence of 45
years reflects the serious nature of drug trafficking and the damage to his own community Mr.
Williams engaged in by participating in it, as well as addresses the prior court's consideration of
Mr. Williams participation in first-degree murder in the course of conspiracy.

Third and fourth, the kinds of sentences available here are a range of 5-40 years of
incarceration, and under the U.S.S.G. § 2A1.1 factors considered for participation in Mr. Craig's
death, a sentence of life with potential for a downward departure. Given the changes in
sentencing law for drug and drug-related crimes, the full range of sentences available, Mr.
Williams' efforts to rehabilitate, and the mandatory minimum sentences he is subject to for his
18 USC § 924(c), the conspiracy sentence the Court imposes is mid-range and appropriate. Fifth,
the pertinent policy statements regarding the First Step Act indicate that Mr. Williams and his
co-defendants in the Carter cases have the types of cases meant for sentence reevaluation under
more just sentencing standards.

Sixth, the need to avoid unwarranted sentence disparities among defendants with similar
records who have been found guilty of similar conduct is adequately addressed by this sentence
because Mr. Williams' reduction from life to 180 months is in line with those of his co-

defendants who had similar commitments to rehabilitation, despite sentences with lengths that meant they might not get a chance to reenter society and use the skills and treatments they worked towards attaining. Further, a total sentence of forty-five years adequately accounts for the prior court's intent in sentencing with consideration of Mr. Williams' participation in a murder.

Seventh, the need to provide restitution to victims of the offense is accounted for with Mr. Williams' 45 year sentence. By the time of release, Mr. Williams would have spent two-thirds of his life in prison atoning for his actions and working towards rehabilitation and restoration, and if his history of conduct while incarcerated demonstrates anything, it is that he will continue to work on bettering himself. While the Court recognizes that a reduction from a sentence of life plus 30 years to a total sentence of 45 years is significant, it is appropriate in light of the factors.

## IV.   CONCLUSION

For the reasons set forth above, Mr. Williams' Motion for a Reduction of Sentence is **GRANTED** and the Court reduces his term of imprisonment to 180 months plus 300 months plus 60 months with credit for time served. Upon his release from custody, the Defendant's period of supervised release is reduced from five (5) years to four (4) years.